BOERNER FRY Co., Appellee, v. I. MUCCI, Appellant.

**Sales:** ACTION FOR THE PRICE: ISSUES: INSTRUCTIONS. In an action for goods sold and delivered, in which the buyer claimed they were bought by sample and that they were not of the same quality, submission of the case on that theory was sufficient, over the objection that the instructions ignored the charge of false representations and worthlessness of the goods; since if they were not according to sample it was immaterial whether defendant charged false representations in that respect, or breach of warranty.

**Instructions.** Where the court submits a cause on the theory of a party as disclosed by his testimony, though the evidence may not be consistent with his pleadings, he has no ground for complaint.

**Same:** REFUSAL OF REQUESTS. The refusal of requested instructions fairly covered by those given by the court is not erroneous.

**Same:** FAILURE TO SEPARATE ISSUES. Where the buyer of goods, in defense to an action for the price, pleaded that they were bought by sample with which they did not comply, and also filed a counterclaim based upon the same breach of contract, he can not complain that the court in its instructions failed to separate the affirmative defense and the counterclaim.

**Evidence:** EXPERIMENTS: DISCRETION. The question of making experiments in the presence of the jury is peculiarly within the discretion of the trial judge. In the instant case the court did not abuse its discretion in refusing the proffered testimony.

**Sales:** EVIDENCE. Where the buyer in an action for the price of goods pleaded the worthlessness of the same, it was within the discretion of the court to permit the seller to show in a general way the extent of his sales of the article.

*Appeal from Pottawattamie District Court*—HON. O. D. WHEELER, Judge.

THURSDAY, DECEMBER 12, 1912.

THE Plaintiff is a manufacturer of vanilla extract, residing at Iowa City. The defendant is a manufacturer and wholesale dealer in ice cream, residing at Council Bluffs. In October, 1909, the defendant gave a written order to plaintiff for the purchase of 52 gallons of special vanilla extract at $3.50 per gallon, payable June 1, 1910. The order purported to be signed by the defendant and by W. C. Burge, a traveling salesman of the plaintiff. The goods having been delivered, the plaintiff brought this action upon the order. The defendant admitted the execution of the order, but averred affirmatively that the sale was made by sample, and that the goods were not according to sample, and that the defendant had therefore rejected the same and rescinded the contract, and so notified the plaintiff. Defendant also pleaded a counterclaim. Upon a trial to a jury, the plaintiff obtained a verdict for the full amount of its claim. Defendant appeals.—*Affirmed.*

*Flickinger Bros.*, for appellant.

*W. H. Killpack*, for appellee.

EVANS, J.—The alleged errors complained of by appellant are such that it becomes necessary that we set out his answer and counterclaim, upon which the case was tried. We quote the same, as follows, from his additional abstract filed here:

April 14, 1911, defendant filed:
Amended and Substituted Answer.

Denying that plaintiff is a corporation; admits that on or about ———— he gave an order, in writing, to one W. C. Burge, plaintiff's agent and traveling salesman, for barrel of special vanilla extract, in words and figures and at the price set out in plaintiff's petition, and that the same was delivered to him. Further answering, defendant says that said barrel of extract was sold by sample, plaintiff furnishing a sample gallon can of the extract, and covenanting

through their salesman, W. C. Burge, orally that the barrel
of extract to be furnished under said order to be of the same
kind and quality as the sample furnished, when in truth
and in fact the sample by which the sale of the barrel was
made to him was entirely and radically different from the
extract sold him in the barrel, that in the sample being the
kind defendant purchased, and that in the barrel was a
cheaper and different grade of goods entirely, and unfit for
the use defendant purchased the same, namely, flavoring
of his ice cream product.   That plaintiff's agent, Burge,
represented to your defendant orally that the goods sold by
him were the same kind of goods as the sample furnished,
when in truth and in fact the said barrel of extract was
radically different, unlike the sample furnished, and was
wholly unfit for the purpose for which it was purchased.
That said representations were false and known by said
salesman to be false, and defendant relied on said represen-
tations in making his order.

### Counterclaim.

That defendant made use of a small part of this extract
furnished in the barrel in the flavoring of his ice cream
product, and the same resulted in his customers refusing the
same and in shipping the same back.   The extract gave the
ice cream a flavoring of fancy soap.   [Here follows a list of
customers who returned the ice cream flavored with the
extract from the barrel.]   Which parties were old-time cus-
tomers, and that defendant is damaged in his reputation in
the manufacture of ice cream and his business, by reason of
the use of said extract, in the sum of $500.   Defendant
further states that he advised plaintiff of the fact that the
barrel of extract could not be used, and that the same was
subject to plaintiff's order, and that the same is now still
held subject to his order, which notice was given as soon
as he discovered the condition of said extract.

I.   The trial court submitted the case to the jury upon the
theory that the defendant pleaded a sale by sample, and that

1. SALES: action
for the price:
issues: instruc-
tions.

the goods furnished were not equal to the sam-
ple.   Appellant complains of the instructons
as a whole in this respect and urges that they
"misstate the pleadings and misstate the evidence," and

that they lose sight of the charge of false representation
and of worthlessness of the goods shipped. A perusal of
the defendant's pleading, which we have above set forth,
is sufficient answer to this complaint. The only false repre-
sentation charged in such pleading is that the goods were
not according to sample. If they were not equal to sample,
it was quite immaterial whether the defendant should have
charged ''false representation'' or breach of warranty for
a failure to comply with the sample. He did plead that
because of such failure he rescinded the contract and tendered
back the goods. The trial court submitted the case upon
this theory. There was no other theory presented by de-
fendant's pleading.

II. The trial court instructed the jury that the burden
was upon the defendants to prove the following propositions:

First. That it was agreed between Burge, the plain-
tiff's agent, at the time of the sale, and the defendant, Mucci,
that the barrel of extract in question would be of the same
kind and quality as that contained in a sample *to be fur-
nished* by the plaintiff company. Second. That a sample
in accordance with such agreement, was furnished to de-
fendant by the plaintiff company. Third. That the barrel
of extract in question did not correspond with such sample
so furnished in kind and quality, but was inferior thereto.
Fourth. That the defendant, within a reasonable time, after
said barrel was delivered to him, elected to rescind said con-
tract and to return said goods, and notified the plaintiff
company of his election so to do.

The appellant complains because this instruction as-
sumes that the sample referred to was *"to be furnished"* sub-
sequent to the date of the contract. The same
2. INSTRUCTIONS.  assumption appears in other instructions of
the court. The order sued on in this case was dated October
25, 1909. It provided for delivery April 1, 1910, and pay-
ment sixty days thereafter. Turning to defendant's answer,
its natural construction would be that a sample was pre-

sented at the time of the sale.   Appellant's counsel contends strenuously for this construction.   Plaintiff's witness Burge testified that he had a sample vial of the extract at the time the order was taken.   But this statement was vigorously denied by the defendant, Mucci, in his testimony, notwithstanding the form of his answer.   Defendant also testified that a sample gallon was ''to be sent'' to him forthwith before the filling of the principal order, and that such sample gallon was sent to him later in November, and that he thereafter directed the shipment of the principal order.

We quote from his testimony, as it appears in his own abstract, as follows: ''I ordered a barrel of vanilla extract along about December, 1909, through a Mr. Burge, who is here in the courtroom.   He came to my place in Council Bluffs along in the fall and wanted to sell me a barrel. . I told him to send a sample of the barrel, which he did later in the fall, about a month or six weeks before I made the order.   I examined this sample. · *It was vanilla extract, made of beans, good vanilla, and we used it.*   Later, afterwards he came along, and I ordered from him a barrel, which was to be the same thing as the sample he had already sent.   Burge told me that *the vanilla would be a vanilla bean extract, either 'Vergonis' or 'Mexican,' and it would be just as good as the sample he had sold me.*   The barrel was to be the same as the sample.   I was paying less money for it than what I had bought before; *but it was to be like the sample—good vanilla flavoring, which he charged me $5 for.*   I got the sample some time in November—some time before I gave the order, maybe a month or four weeks—by express.   Then Burge came back again and took my order for the barrel.''

He also wrote the following letter to the plaintiff, which he introduced in evidence at the trial:

''Council Bluffs, Iowa, July 8, 1910.

''Boerner Fry Co., Iowa City, Iowa—Gentlemen: The vanilla we ordered from your agent was to be a *straight va-*

*nilla extract. It is not like the sample sent me. Your agent gave us a guarantee, a pure vanilla, as good as the sample sent us."*

The foregoing quotations render it very clear that the instructions of the trial court at the point complained of simply adopted the theory of the defendant in his testimony upon the trial. Even if such testimony was inconsistent with his pleadings, he is in no position to complain that the trial court submitted the case to the jury upon his own theory of the facts. It will be noted, also, that the allegations of the answer are not necessarily inconsistent with this theory.

III. The defendant presented to the trial court three requested instructions, which were marked "Refused," and these

3. SAME: refusal of requests.

are presented for our consideration. Although the particular instructions requested were marked "Refused," they were in fact incorporated, in their essential features, in the instructions given by the court upon its own motion. Appellant's argument contends for the propriety of the instructions; but he does not point out to us any essential part of any one of the same which is not fairly included in the instructions as given.

IV. Complaint is made that the trial court did not properly separate the allegations of the affirmative defense

4. SAME: failure to separate issues.

and those of the counterclaim, and that these were so mingled in the instructions, that the jury could not distinguish between them. The instructions quite conformed to the defendant's pleading. as he chose to make it. The affirmative defense went to plaintiff's whole case. If sustained, it would necessarily defeat any recovery on the part of plaintiff. In the absence of consequential damages, the defeat of the plaintiff's cause of action would measure the full amount of plaintiff's injury. But the counterclaim pleaded consequential damages, in that the attempted use of the defective material had destroyed other material of large value. But the counterclaim, never-

theless, necessarily rested upon the same breach of contract as the affirmative defence. The defendant prefers to call it "false representation," but this adds nothing to his case. It was sufficient for him to show that the goods did not correspond to sample, and that he rescinded because thereof. If it were essential to his defense that he show false representations in a legal sense, then his case would fail for want of proof of *scienter*.

It is urged in argument that the counterclaim rested upon different allegations of falsity from those of the affirmative defense. We are unable to find any allegations in the counterclaim to warrant this contention; nor are we ready to concede that it could rest upon any different allegations, except as to the extent of damages claimed. The damages set forth in the counterclaim are claimed to be consequential to the breach pleaded in the affirmative defense.

V. Complaint is made of rulings in the admission of evidence. The witness Day, one of the employees of the defendant, testified on behalf of defendant as

5. EVIDENCE: experiments: discretion.

follows: " 'We mixed up a batch of cream, ten gallons, with four ounces of vanilla.' Bucket of ice cream produced, marked 'Exhibit 13.' 'The vanilla extract was taken out of this barrel, marked "Boerner Fry Co.," and is in that ice cream. *It has a taste of vanilline or vanilla extract. Vanilline is used in imitation flavoring.*' At this time defendant asks that the jury be permitted to taste the ice cream in the jar, 'Exhibit 13.' Objected to as incompetent and immaterial and irrelevant. Court: 'I do not believe, gentlemen, I will permit the jury to indulge in this luxury at the present time.' Defendant excepts."

We have frequently held that the question of making experiments in the presence of the jury is one peculiarly within the discretion of the trial court. *Chicago Supply Co. v. Marne Telephone Co.*, 134 Iowa, 252. Several good reasons occur to us why the trial court might properly refuse

the proffered testimony. The preliminary showing was deficient. The professed purpose of the experiment was to show that the extract in question would produce a "soapy taste" in the ice cream. It is quite manifest that, though the extract had been perfect, the ice cream might nevertheless disclose the "soapy taste." The court would then have to try the question as to what other ingredients were contained in the ice cream, and as to whether any of them, other than vanilla extract, were calculated to produce a "soapy taste." If the "soapy taste" was to be traced to the extract, the extract itself would have been a sufficient offer. The trial court was clearly within its discretion in the ruling complained of.

The trial court also permitted the plaintiff to show, in a general way, the extent of its sales to customers of the kind of vanilla extract involved in the controversy. Complaint is made of this line of testimony. It was quite beside the real issues. Its only justification was that the defendant had redundantly pleaded the worthlessness of the article, and had introduced some evidence along the same line. The trial court was within the proper exercise of its discretion in permitting the plaintiff to meet such evidence within reasonable limits. We think appellant has no ground for complaint here.

c. SALES: evidence.

The foregoing covers the principal points argued. The record is badly chopped up with five abstracts and four arguments, and this has materially increased our labors in disposing of the case.

We find no reversible error in the record, and the judgment below is accordingly *Affirmed.*